Kathlene Marie Jegloski
BEEDE, Respondent,

v.

Ralph Burgess LAW, Jr., Appellant.

No. C5–86–1156.

Court of Appeals of Minnesota.

Feb. 17, 1987.

Michael J. Cuzzo, Duluth, for appellant.

Douglas P. Merritt, Duluth, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

CRIPPEN, Judge.

Ralph Law appeals from the trial court's order retroactively modifying his child support obligation based on later discovered information, increasing the current amount of support in accordance with appellant's earning capacity, and providing for future retroactive adjustments in support.

## FACTS

In 1982, appellant Ralph Law was adjudicated the father of respondent Kathlene Beede's two children. In setting appellant's child support obligation, the court determined he was earning $15.63 per hour as an electrician for a firm in Superior, Wisconsin, but that he was working only 17–20 hours per week. The court ordered appellant to pay monthly child support of $200. At the time, respondent Beede was receiving public assistance.

In July 1985, respondent moved to increase support to comply with the statutory guidelines. Appellant then moved for an order reducing child support and forgiving arrearages. The court held an evidentiary hearing in February 1986.

Appellant's income has fluctuated due to the seasonal nature of his construction work and the economic depression in the Duluth-Superior area. Appellant's employer testified that he had 38 full-time electricians in 1982 but currently has only four part-time employees. A union representative testified to a 45 percent unemployment rate among electricians. In addition, appellant has difficulty securing contracts in Minnesota, where an unlicensed electrician can only work if accompanied by a licensed electrician. Appellant and his employer testified he worked full-time on a project from June 1984 to July 1985, but that he has been working only 10–15 hours per week since that time. Appellant is currently paid $16.00 per hour.

Appellant fully complied with the child support order through October 1985, with the exception of the June 1985 payment. He made no payments after October 1985.

Appellant claimed current net monthly income of $500 and monthly living expenses of $700. No evidence was offered on respondent's income or living expenses or on the children's needs or resources, except a showing that respondent is no longer receiving public assistance. A few months after the hearing, one of the two children died in an accident.

Appellant requested forgiveness of arrearages that have accrued since November 1985, arguing that his failure to pay was not willful because he had not been able to get sufficient work, and noting that his 1985 motion for a reduction in support was made well before he stopped paying under the order. Appellant agreed to pay the June 1985 arrearage.

Respondent argued that "something went wrong back in August of 1982 when the child support was set at $200 per month * * * because someone represented to the Court that [appellant] was working 17 to 20 hours per week and the Court made such a finding." Respondent further argued that appellant's sudden drop in earnings in July 1985 indicated an intent to misrepresent his income in order to defeat respondent's motion for an increase in support. Respondent asked for a support order of 30 percent of appellant's income, the guidelines amount for obligors with net monthly incomes in excess of $1000.

The trial court decided to reopen the 1982 judgment based on a finding that appellant had falsely and fraudulently stated his income at the time the support obligation was first established. The court determined appellant's net monthly income for each year, applied the statutory guidelines to these amounts, and ordered him to pay nearly $7000 in additional retroactive sup-

port, including over $4200 for 1984. The court expressly stated that the readjustment was not caused by a failure to comply with the previous support order.

The court rejected respondent's claim that appellant voluntarily reduced his income in 1985. However, the court found that appellant's prior work history shows he is capable of earning $1000 net per month. Without further findings, the court increased support to $300 until May 29, 1986, the date one of the children died, and to $250 (the guidelines amount based on $1000 income and one child) thereafter. To compensate for actual deviations from appellant's earning capacity, the court scheduled regular retroactive modifications in support.

### ISSUES

1. Did the trial court err in retroactively modifying appellant's support obligation?

2. Did the trial court err in its modification of appellant's current support obligation?

3. Did the trial court err in scheduling ongoing retroactive modifications?

### ANALYSIS

1. The first question presented is whether a retroactive modification of support can be upheld when it was not requested and there is no evidence of noncompliance with the prior order, but when the court acts on a theory of fraud in the original setting of support. We initially note that respondent has not defended the trial court's position on appeal.

"The jurisdiction of trial courts in dissolution matters is 'equitable' in nature, and the trial court can grant relief that is required in these cases to justly deal with the interests of the parties." *Scott v. Scott,* 373 N.W.2d 652, 654 (Minn.Ct.App.1985). The courts have inherent power to grant such equitable relief. *DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755, 758 (Minn.1981). *See also Zaine v. Zaine,* 265 Minn. 105, 108, 120 N.W.2d 324, 326 (1963); *Gannon v. Gannon,* 258 Minn. 57, 60, 102 N.W.2d

677, 679–80 (1960). This principle extends to retroactive modifications of child support. *Scott,* 373 N.W.2d at 654.

The court does not have jurisdiction, however, to act contrary to legislature statements on the exercise of its powers. *Gannon,* 258 Minn. at 60, 102 N.W.2d at 679–80. The governing statute requires a two-step process in retroactive support modifications. First, it must be shown that a substantial change of circumstances has occurred that makes the terms of the original order unreasonable and unfair. Minn. Stat. § 518.64, subd. 2 (1986). Second, the court must find that the obligor has not "substantially complied with the previous order." *Id.* In the present case, the trial court disregarded both parts of the statutory analysis.

The trial court relied solely on the statutory child support guidelines to determine what appellant's support obligation should have been. Although this avoided the practical impossibility of reviewing all the factors that bore on the 1982 decision, the approach conflicts with the modification statute. Furthermore, public policy recognizes the impracticability of ex post facto relitigation and the important right of parties to rely on the finality of a judgment. This policy explains the great significance given by the legislature to a court's original findings.

Trial courts may exercise their equitable powers to vacate judgments on the basis of fraud. *See Lindsey v. Lindsey,* 388 N.W.2d 713, 716 (Minn.1986). Here, however, the record does not support a finding that appellant defrauded the court in 1982. No evidence was introduced to contradict the original finding that appellant was working approximately 17–20 hours per week at the time of the initial support hearing. That his working hours exceeded that level prior to the hearing or after the judgment was entered does not change that fact nor indicate its falseness. Appellant does not dispute that his income has fluctuated over the years. However, through July 1985, when respondent asked

for an increased award, appellant had made all but one support payment when due and he was placed under no burden to report changes in his income.

■ 2. Appellant also disputes the trial court's decision to increase his current support obligation. A modification of support may be ordered only if the moving party first shows that a substantial change of circumstances has occurred such that the original order is unreasonable and unfair. Minn.Stat. § 518.64, subd. 2 (1986). *See Price v. Price,* 390 N.W.2d 483, 485 (Minn. Ct.App.1986). Here, few facts in the record show any change in the parties' financial circumstances. The court found appellant has an earning capacity of $1000 per month. Appellant claims his monthly expenses have increased from $394 to $700; there is no contrary claim. There is no evidence of respondent's changed income or needs, nor of the resources or needs of the surviving child. The trial court did make a finding regarding the death of one child, but did not indicate whether her death was a factor in the need for a modification.

■ Rather, the trial court determined that a modification was warranted solely because appellant has a $1000 per month earning capacity. It did not find, however, that this constitutes a change in circumstances or that any change rendered the original order unreasonable and unfair.

■ Even if a modification were justified, the amount of modification cannot be upheld because the "record fails to reveal that the trial court actually considered the appropriate factors * * * [that are] expressly mandated by the legislature." *Moylan v. Moylan,* 384 N.W.2d 859, 865 (Minn.1986). *See* Minn.Stat. § 518.551, subd. 5(b) (1986). The amount of support was singularly determined by applying the guidelines chart to appellant's earning capacity, without any supportive findings.

The absence of the required findings at all stages of the modification process requires a remand for findings on whether a modification is needed and, if so, the appropriate amount of modification.

On remand, the court must give particular attention to two concerns that have surfaced on appeal. First, it is not evident from the present record that there has been a substantial improvement in appellant's financial circumstances. In 1982, he had a net monthly income of $726, which the trial court found has increased by 37 percent to $1000. However, his expenses have evidently increased by 78 percent, from $394 to $700. Indeed, appellant claims his available income has decreased such that he deserves a decreased support obligation.

■ Second, appellant contends the court's finding of his current income is clearly erroneous. *See* Minn.R.Civ.P. 52.-01. Trial courts "may properly consider earning capacity and earnings history to determine a party's ability to comply with a child support order." *LeTendre v. LeTendre,* 388 N.W.2d 412, 416 (Minn.Ct.App. 1986). *See also Fruen v. Fruen,* 228 Minn. 391, 399, 37 N.W.2d 417, 421 (1949) (trial courts may consider past earnings "to determine whether because of extraordinary reasons [an obligor's] income for a particular year was no guide"). As a guideline for support, however, earning capacity is not an appropriate measure of income unless (1) it is impracticable to determine an obligor's actual income or (2) the obligor's actual income is unjustifiably self-limited.

Use of earning capacity findings normally involves obligors who are self-employed or who have improperly reduced their income. *See, e.g., LeTendre,* 388 N.W.2d at 416 (given the evident difficulty in determining the net income of self-employed persons, the trial court's finding on income, based on earning capacity, was not clearly erroneous); *Ferguson v. Ferguson,* 357 N.W.2d 104, 108 (Minn.Ct.App.1984) ("the opportunity for a self-employed person to support himself yet report a negligible income is too well known to require exposition"). *Resch v. Resch,* 381 N.W.2d 460, 462 (Minn.Ct.App.1986) ("proper to look beyond an obligor's earnings to his earning

capacity, and to disregard any voluntary inability to pay"); *Quick v. Quick*, 381 N.W.2d 5, 9 (Minn.Ct.App.1986) (self-employed person voluntarily incurred expenses to expand his business); *Giesner v. Giesner*, 319 N.W.2d 718, 720 (Minn.1982) (even voluntary loss of income is justified when in good faith).

Neither situation is presented here; it is not evident that appellant's present income cannot be determined and the court specifically found that he did not "endeavor to self-limit his income." On remand, the trial court should attempt to determine appellant's actual income without resorting to an estimate of his earning capacity.

3. The trial court scheduled future annual retroactive adjustments in appellant's support obligation that will be based on his income for the previous twelve months. The court found the method practical solely because it utilized a simple application of the child support guidelines. However, the retroactive effect of future changes also conflicts with the statutory scheme and cannot stand. As previously discussed, the statute prohibits retroactive adjustments absent a failure to comply with a prior order. Minn.Stat. § 518.64, subd. 2 (1986). It is evident as well, because support amounts can no longer be set by mechanical application of the guidelines, that annual retroactive settings will require far more difficult efforts than the trial court anticipated. *See Moylan*, 384 N.W.2d at 864–65.

As appellant suggests, there are two sensible alternative methods to deal with fluctuating income. The court may require payment of a fixed percentage of the obligor's income, or it may demand reports of future changes in income to the court so that the support amount can be adjusted accordingly. Both methods are now authorized by statute. *See* Minn.Stat. § 518.57, subd. 2 (1986) ("The court shall establish the annual support of an obligor with a seasonal income so that the obligor makes either the same monthly payments throughout the year or monthly payments that reflect variations in income"). On re-

mand, the court should consider these alternatives to deal with future income fluctuations.

## DECISION

The trial court's retroactive support modifications contravene the support modification statute and are reversed. With regard to modification of the future award, the court did not make the required statutory findings. The case is remanded for additional findings and an order consistent with the statute and this opinion. The court also erred in scheduling automatic retroactive adjustments to appellant's ongoing support obligation.

Reversed and remanded.