**In re the Marriage of Renee Jean FERGUSON, Petitioner, Respondent,**

v.

**Stanley Dean FERGUSON, Appellant.**

**No. C3–84–793.**

Court of Appeals of Minnesota.

Oct. 30, 1984.

Paul E. Rockne, Zumbrota, for respondent.

James C. Nordstrom, Lake City, for appellant.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

This is an appeal from the trial court's order denying appellant-husband's motion for a new trial and amending the judgment and decree dissolving his marriage to Renee Jean Ferguson. Appellant claims the trial court erred in awarding the entire homestead to the wife and in ordering appellant to pay $300 per month in child support.

## ISSUES

1. Did the trial court err in valuing the marital property and in awarding the homestead exclusively to the wife?

2. Did the trial court abuse its discretion by considering appellant's earning capacity in setting the child support award when he had recently become self-employed and his current earnings did not indicate an ability to pay the amount set?

## FACTS

Renee Jean Ferguson and Stanley Dean Ferguson were married in March 1973. The names and birthdates of the three children born during the marriage are as follows: Jason Dean, born April 24, 1973; Jamie Renee, born June 7, 1976; and Jesse Lee, born June 30, 1982.

In September 1983 a decree was entered dissolving the marriage, distributing the parties' property and awarding custody and support of the children.

The parties acquired virtually all of their real and personal property during the marriage, including a homestead, a 1979 Freightliner semi-tractor trailer (used by Stanley in his business), three automobiles and miscellaneous personal property. Stanley submitted by stipulation a real and personal property appraisal report prepared by a local professional auctioneer. Renee submitted a proposed property division in which she also attached values to the parties' property. She used the values assigned to the personal property by Stanley's appraiser in most instances but inserted values based on her own judgment for the remainder. She had the homestead appraised separately. At the trial Stanley agreed with most of Renee's proposed property division.

The major valuation dispute concerned the homestead. Renee's real estate appraiser valued the homestead at $28,500, while Stanley's appraiser valued it at $37,000. Since the homestead was subject to a $16,000 mortgage, it had a net value of $12,500 by Renee's valuation and $21,000 by Stanley's.

The trial court found that Renee's property valuation and proposed division were fair and reasonable and ordered a division of property accordingly. Thus, Renee received exclusive ownership of the homestead, and Stanley was given the 1979 Freightliner semi-tractor trailer, both subject to their respective mortgage debts. The net value of property awarded Renee was $15,718; the net value of Stanley's award was $13,382.30. However, Renee was also ordered to assume medical debts totalling $1,921. After subtracting this amount from the assets given Renee, the difference between awards to the parties is negligible.

Neither party was given maintenance. The parties were awarded joint legal custody of the children, while Renee received primary physical custody. Stanley was ordered to pay $300 child support for two months, increasing to $500 per month thereafter.

Both parties were employed at the time of the dissolution. Renee was employed by the Rochester Post Bulletin as a delivery person, while Stanley had been a self-employed, long-haul trucker since 1981. The parties' 1979 through 1982 income tax returns reveal the following adjusted gross incomes, most of which was earned by Stanley:

| | |
|---|---|
| 1979 | $23,632 |
| 1980 | $19,608 |
| 1981 | $14,276 |
| 1982 | $ 9,542 |

During the period between January 1, 1983, and August 24, 1983, Stanley reported a net income of $1,102. However, at trial Stanley stated that he thought he could afford $300 per month in child support if business improved.

After judgment was entered Stanley sought to modify the property award and support order. After two hearings the trial court issued an order reducing child support to $300 per month.

## DISCUSSION

### I

There is no dispute that all the property divided by the court in this dissolution proceeding was marital property as defined by Minn.Stat. § 518.54, subd. 5 (1982). Division of marital property is governed by Minn.Stat. § 518.58 (1982), which provides:

Upon a dissolution of a marriage, * * the court shall make a just and equitable division of the marital property of the parties without regard to marital misconduct, after making findings regarding the division of the property. * * * It shall be conclusively presumed that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife.

■ The trial court has broad discretion in dividing marital property. *E.g., Mentzos v. Mentzos*, 353 N.W.2d 683, 684 (Minn.Ct.App.1984); *Bogen v. Bogen*, 261 N.W.2d 606, 609 (Minn.1977). On review, the trial court's division cannot be set aside unless it is clearly an abuse of discretion. *Taylor v. Taylor*, 329 N.W.2d 795, 797 (Minn.1983).

The parties in this case proposed conflicting real and personal property valuations. Stanley argues that the trial court erred by accepting Renee's valuations and rejecting those of his expert. He contends that the resulting award of the homestead exclusively to Renee was unfair and should be overturned.

■ The fact that Renee valued some of the personal property without the aid of an expert is not significant, since in Minnesota the owner of property is presumptively knowledgeable about its value. *Lehman v. Hansord Pontiac Co., Inc.*, 246 Minn. 1, 6, 74 N.W.2d 305, 309 (1955). Moreover, while "a trial court is not bound by the opinion of any witness concerning values * * * its findings will ordinarily be sustained if within the limits of the evidence as to values." *Id.* at 7, 74 N.W.2d at 310. *See also Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975) (the market valuation determined by the trier of fact should be sustained if it falls within the limits of credible estimates made by competent witnesses).

■ The parties proposed conflicting real property valuations based on opinions of their experts. Where conflicting opinions of expert witnesses have a reasonable basis in fact, the trier of fact must decide who is right, and the decision will not be overturned on appeal. *See Shymanski v. Nash*, 312 Minn. 304, 308, 251 N.W.2d 854, 857 (1977).

■ The record is clear that the valuation chosen by the trial court was reasonable in that it was based on credible estimates made by competent witnesses including Renee and her expert. Therefore, no error or abuse of discretion was shown.

■ Stanley argues that even if Renee's property valuation is accepted, the difference between assets awarded is still $2,000. This contention ignores the fact that in making the award the trial court offset $1,921 of the couple's medical debts assumed by Renee against the value of the real and personal property divided. This offset results in a net cash difference of $415. It cannot reasonably be argued that such a difference is error.

■ Stanley also claims that the court should not have awarded the homestead

exclusively to Renee because it was acquired substantially by his own work efforts. This claim fails under Minn.Stat. § 518.58, which conclusively presumes that "each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife." Renee's contributions as a homemaker must be valued with Stanley's monetary contributions.

■ Finally, Stanley asserts that Renee had a greater net income at the time of the dissolution so the award of the homestead to her was unfair. If it is true that Renee had a greater net income than Stanley at the time of the dissolution, it is also true, as found by the trial court, that she is supplying most of the support for the children. Stanley has not shown that the property division was unfair or an abuse of discretion.

## II

■ The trial court has broad discretion in awarding child support. *Taylor v. Taylor*, 329 N.W.2d 795, 797 (Minn.1983). Stanley argues that the trial court abused its discretion and did not have sufficient evidence to support its finding that he should pay $300 per month child support. He claims the award is in excess of his ability to pay and was a severe deviation from the child support guidelines proposed by Minn.Stat. § 518.551 (Supp.1983).

■ The child support guidelines were effective August 1, 1983, and are applicable after that date. *Halper v. Halper*, 348 N.W.2d 360, 362 (Minn.Ct.App.1984). The guidelines are incorporated for use in all child support cases by Minn.Stat. § 518.17, subd. 5 (Supp.1983). This statute requires the court to set child support at an amount not less than the guidelines set for public assistance cases unless the court makes express findings of fact.

Stanley argues that under the guidelines the trial court's order presumes a net income of $855 per month. He states that his 1983 income was well below that figure, and therefore the trial court's requirement that he pay $300 per month child support constituted a severe deviation from the guidelines.

Assuming Stanley's claim regarding his 1983 income is true, the trial court did deviate upward from the guidelines in setting the child support award. However, in its memorandum supporting amended findings the trial court made it clear that the child support order was based on a judgment as to Stanley's earning capacity.

The Supreme Court has held that a trial court may consider past earnings in setting child support "to determine whether because of extraordinary reasons his income for a particular year was no guide." *Fruen v. Fruen*, 228 Minn. 391, 399, 37 N.W.2d 417, 421 (1949) (citing *Loth v. Loth*, 227 Minn. 387, 399, 35 N.W.2d 542, 549 (1949)). *See also Hopp v. Hopp*, 279 Minn. 170, 177, 156 N.W.2d 212, 218 (1968) (it is proper for a trial court to consider a party's earning capacity and earnings history to determine his ability to comply with a child support order).

■ In this case, the trial court noted that Stanley's income tax figures were not a true reflection of his earning ability because he had recently moved from wage-earner to self-employed status. Additionally, the opportunity for a self-employed person to support himself yet report a negligible net income is too well known to require exposition. Realistically, $300 per month is a trifling amount for support of three children in the 1980's. It cannot be said that the trial court abused its discretion in setting the child support award.

The question of whether Stanley can comply will be left to those responsible for enforcement efforts and the trial court if necessary.

## DECISION

Affirmed.